IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHNATHAN WAYNE COX                                            PLAINTIFF

        v.                         Civil No. 08-5125

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                       DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff, Johnathan Cox , brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**Procedural Background**

The plaintiff filed his applications for DIB and SSI on June 16, 2005, alleging an onset date of November 15, 2004, recurrent right inguinal hernia and back problems.  (Tr. 59-60, 77-78).  His application was initially denied and that denial was upheld upon reconsideration.  (Tr. 30-34, 39-40, 159-165).  Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ).  An administrative hearing was held on April 11, 2007.  (Tr. 166-183).  Plaintiff was present and represented by counsel.

At this time, plaintiff was 38 years of age and possessed an eighth grade education. (Tr. 171 ). He had past relevant work ("PRW") as a grocery stocker. (Tr. 15, 60, 172).

On December 26, 2007, the ALJ found that plaintiff had a combination of severe impairments, but he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 11). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform light work requiring walking for about 2 hours in an 8-hour workday and 1 hour without interruptions; sitting for about 6 hours in an 8-hour workday and 1 hour without interruptions; and, occasionally operate foot controls, climb, balance, and kneel. Plaintiff could not, however, stoop, crouch, or crawl. (Tr. 12). With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a machine feeder and cashier II. (Tr. 16).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on March 31, 2008. (Tr. 5-8). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 14, 15). The plaintiff has also filed a motion to submit new and material evidence. (Tr. 12).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

**Discussion**

In the present case, plaintiff has submitted a motion Of particular concern to the undersigned is the ALJ's failure to properly consider all of plaintiff's impairments in combination when determining his RFC. The ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects. *Delrosa v. Sullivan*, 922 F.2d

3

480, 484 (8th Cir. 1991) (citing *Johnson v. Secretary of Health & Human Servs.*, 872 F.2d 810, 812 (8th Cir. 1989). In the present case, therefore, the ALJ was obligated to consider the combined effect of [Plaintiff]'s physical and mental impairments. *Id. at 484, citing Reinhart v. Secretary of Health & Human Servs.*, 733 F.2d 571, 573 (8th Cir. 1984); *Wroblewski v. Califano*, 609 F.2d 908, 914 (8th Cir. 1979). It should be noted that Plaintiff alleged numerous impairments. Under these circumstances, the Social Security Act requires the Commissioner to consider all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling. *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

Records indicate that plaintiff injured his back in 1998 with reinjury in 2000. On both occasions, he was diagnosed with lumbar strain and prescribed Vicodin, Flexeril, and Naprosyn. X-rays of plaintiff's lumbar spine taken on August 5, 2003, revealed lumbar straightening, perhaps due to muscle spasm. (Tr. 117). A slight concave lumbar curvature was noted on the right with Schmorl's node impressions at every level suggesting a long-term pattern of generous weight bearing or stress. Schmorl's node impressions were also seen on several of the upper lumbar segments. (Tr. 117).

On December 1, 2005, plaintiff underwent a general physical exam. (Tr. 142-148). Plaintiff reported a sudden onset of back pain with numbness in the legs. An examination revealed a normal range of motion in all areas. Dr. J. Garrett did, however, note that plaintiff had 90% of normal grip strength and used a cane to walk. Plaintiff could not walk on his heel and toes or squat and arise from a squatting position. Dr. Garrett then concluded that plaintiff would

4

have moderate limitations with ambulation. (Tr. 142-148). Dr. Garrett also noted that x-ray results showed subchondral sclerosis. (Tr. 149).

At the administrative hearing, the ALJ noted that Dr. Garrett found some limitations, but for some reason, plaintiff was given a nonsevere rating. (Tr. 182). Therefore, he ordered an orthopaedic consultative examination to further develop the record. On July 24, 2007, plaintiff was evaluated by Dr. Alice Martinson, an orthopaedist. (Tr. 150-151). Dr. Martinson noted that plaintiff had experienced gradual progression of pain in his lower back for a period of 4 to 5 years. His pain started out episodically, but over the last few years had become constant and begun to radiate down his right leg to his heel. Plaintiff also reported experiencing numbness and tingling. He indicated that his pain improved some with recumbency, but was markedly worsened by bending. Plaintiff stated that it was difficult to get comfortable in any position. After reviewing plaintiff's medical records, Dr. Martinson stated that the only problem contained in the medical records was a recurrent inguinal hernia for which surgical repair was performed in January 2004. (Tr. 150-151).

A physical examination revealed that plaintiff walked with a cane, making some exaggerated efforts at supporting his right leg. (Tr. 150-151). Throughout the clinical encounter, plaintiff displayed pain behavior characterized by grunting, groaning, grimacing, and flinching. Plaintiff complained of pain to even minimal digital pressure in the lower lumbar area and over the body of the sacrum. On request, plaintiff would demonstrate essentially no spinal motion in any direction because of complaints of pain. His straight leg raise test was limited to 60 degrees bilaterally by hamstring tightness, and on the right he complained of some pain in the right leg at that level which increased with dorsiflexion of the right foot. Plaintiff had hypesthesia to light

5

touch in the lateral aspects of the right thigh, calf, and the dorsum of the right foot. He also had give-away weakness and submaximal efforts with manual muscle testing of all muscle groups of the right lower extremity. X-rays of his lumbar spine revealed a healing fracture of the transverse process of the L3 on the left, which appeared to be fairly recent. (Tr. 150-151).

Dr. Martinson concluded that while plaintiff complained of sensory findings which would be consistent with right L5 radiculopathy, his general behavior was one of symptom magnification, and he had no objective signs of neurologic or musculoskeletal abnormality. (Tr. 150-151). However, she stated that his presentation was significant enough such that further diagnostic evaluation would be warranted, and she indicated that an MRI of the lumbar spine would be the next most appropriate diagnostic test. She then assessed him with a 10 percent total body impairment. (Tr. 150-151). Although she reportedly reviewed his medical records, Dr. Martinson made no mention of previous x-rays indicating that plaintiff suffered from schmorl's nodes and subchondral sclerosis.

Dr. Martinson also completed a physical RFC assessment. (Tr. 152-157). She concluded that plaintiff could continuously lift and carry up to 10 pounds and frequently lift up to 20 pounds; sit, stand, and walk for 1 hour at a time without interruption; sit for 6 hours total during an 8-hour workday; stand and walk for 2 hours total during an 8-hour workday; continuously reach, handle, finger, feel, and push/pull; occasionally operate foot controls; occasionally climb stairs/ramps/ladders/scaffolds, balance, and kneel; never balance, crouch, or crawl; and, should avoid loud noises. (Tr. 152-157).

In support of his contention that he is disabled, plaintiff has submitted additional medical evidence to this court in the form of an attending physician's statement, completed by his treating

6

doctor, Dr. Nancy Jones. This evidence was allegedly submitted to the Appeals Council because it was not received by the plaintiff until after the ALJ had rendered his decision. It was reportedly not made part of the record because the Appeals Council denied review of the ALJ's decision.

In her assessment, Dr. Jones stated that she has treated plaintiff since 1994 for lower back pain for which she has prescribed medications. She rated his pain as moderate in severity, and indicated that it would likely cause him to be absent from work more than 4 days per month. Dr. Jones was of the opinion that plaintiff could sit, stand, and walk for a maximum of 30 minutes continuously without interruption; sit and stand for a total of 4 hours during an 8-hour workday; walk for a total of 2 hours during an 8-hour workday; frequently lift up to 10 pounds; occasionally lift up to 20 pounds; never bend, squat, crawl, climb, stoop, crouch, or kneel; and, occasionally reach above.

The new evidence plaintiff seeks to introduce comes from a treating source and appears to indicate that plaintiff's impairments impose limitations that were more severe, during the time period in question, than the evidence before the ALJ indicated. *See Geigle v. Sullivan*, 961 F.2d 1395, 1396-1397 (8th Cir. 1992). At the very least, this new and material evidence, when considered by the undersigned, causes the court to believe there is a reasonable likelihood it would have impacted the Commissioner's decision. *Woolf v. Shalala*, 3 F.3d 1210, 1215 (8th Cir. 1993). Clearly, evidence from a treating doctor is entitled to substantial weight. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating physician's opinion is generally entitled to substantial weight). Therefore, the case should be remanded to allow the ALJ to review this evidence.

The objective medical evidence indicates that plaintiff was suffering from medically determinable back impairments, namely Schmorl's nodes[1], a transverse process fracture, and subchondral sclerosis/osteoarthritis, for which the record needs clarification. Some doctors have noted these impairments on x-rays while others have not. For example, Dr. Martinson noted the transverse process fracture, but failed to discuss the evidence of Schmorl's nodes and subchondral sclerosis found on previous x-rays. Further, Dr. Garrett noted that plaintiff suffered from subchondral sclerosis and assessed him with moderate limitations, but did not mention the Schmorl's nodes and failed to define what he meant by moderate limitations. As the record stands, it simply is not clear exactly what plaintiff's diagnosis is and how it impacts his ability to perform work-related activities. Therefore, on remand, the ALJ is also directed to clarify the record concerning plaintiff's back impairment.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision should be reversed and remanded to the Commissioner for consideration of the additional medical evidence pursuant to sentence six of 42 U.S.C. § 405(g).

DATED this 17th day of July 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

---

[1] A schmorl's nodule is defined as a "prolapse of the nucleus pulposus through the vertebral body endplate into the spongiosa of an adjacent vertebra." *See* PDR Medical Dictionary 1223 (2nd ed. 2000).